514 P.2d 1249

**STATE of Arizona, Appellee,**

v.

**Roy Lee TROTTER, Appellant.**

**No. 2514.**

Supreme Court of Arizona,
In Division.

Oct. 24, 1973.

Rehearing Denied Nov. 27, 1973.

Gary K. Nelson, Atty. Gen., Peter Van Orman, William P. Dixon, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

LOCKWOOD, Justice:

Roy Lee Trotter, hereinafter referred to as the defendant, was convicted below on one count of armed robbery and was sentenced to a term of from ten to fifteen years in the Arizona State Prison.

The issues raised by the defendant on appeal are as follows:

1. Was the failure to give a cautionary instruction regarding the polygraph evidence reversible error although such an instruction was not requested?

2. Could the defendant be convicted of the robbing of a clerk of the market who was named in the indictment when in fact it was the owner of the market who handed over the money?

3. Was the prosecutor's question on cross-examination as to whether the defendant had said he was not going to "cop out" reversible error?

4. Were the prosecutor's comments in closing argument on the failure of defendant's alibi witnesses to contact the authorities prior to the trial prejudicial and reversible error even though the jury was instructed to disregard them?

Taking the facts in the light most favorable to sustaining the verdict, as we must on appeal, State v. Dutton, 106 Ariz. 463, 478 P.2d 87 (1970) they are as follows:

On October 21, 1971 at approximately 10:00 p. m. a 7/11 convenience market in South Phoenix was held up by a lone gunman. The robber entered the store, pointed a gun at Alan Flory, a clerk who was fixing a cooler in the back of the store, and ordered him to go over to the checkout stand where the owner of the store was working. The robber demanded that the money be handed over. The money was handed over by Jerry Winfrey, the store owner, and the robber fled on foot.

The robbery was immediately reported to the Phoenix police. Later that night the police brought a suspect back to the store for the two witnesses to view. Both witnesses indicated that he was not the robber.

A few days after the robbery occurred both witnesses attended a police lineup but failed to identify anyone. Defendant was not in that lineup. Later they were shown a series of photographs depicting three persons, one of whom was the defendant. Flory immediately identified the defendant as the robber. Winfrey was unable to make any identification.

Based upon Flory's positive identification, a complaint was filed charging that the defendant robbed Flory on the night in question. At the trial Flory identified the defendant as the person who committed the robbery. In addition pursuant to a written stipulation, the results of a polygraph examination which the defendant submitted to prior to trial, were admitted at the trial. An agent for the Department of Public Safety testified that he administered the examination to the defendant. As part of the examination he asked two questions relating to the robbery. He testified that in his opinion the defendant answered untruthfully when he answered no to the questions "Did you hold a gun on the clerk at the 7/11 Market on 16th Street and Southern and steal about $150.00?" and "Did you hold up that 7/11 Market and steal that money that was placed in a blue plastic Valley National Bank bag?"

After the defendant put on his case which consisted of an alibi corroborated by three defense witnesses, he was convicted of the charge by the jury.

■ Defense counsel claims that the failure of the trial court to give a cautionary instruction to the jury regarding the polygraph evidence was error and required reversal although such an instruction had not been requested. This court has provided numerous built-in safeguards in the qualifications for the admissibility of this type of evidence. State v. Valdez, 91 Ariz. 274, 371 P.2d 894 (1962). These qualifications which must be fully met before the results of a polygraph examination will be admitted, are as follows: (1) A written stipulation for the test and subsequent admission of the graphs at the trial; (2) The trial judge may refuse to accept such evidence; (3) That if the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross-examine the examiner; and (4) The trial judge should instruct the jury that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged but at most tends only to indicate that at the time of the examination defendant was not telling the truth. Further, the jury members should be instructed that it is for them to determine what corroborative weight and effect such testimony should be given.

The record reveals that the judge properly instructed the jury that it was for them to determine the corroborative weight and effect that such testimony should be given. However the trial court judge failed to instruct the jury that the examiner's testimony does not tend to prove or disprove any element of the crime but only tends to indicate that the defendant was not telling the truth at the time of the polygraph examination. Such an instruction is mandatory in cases where the results of a polygraph examination are admitted into evidence under the qualifications we set forth in Valdez, supra. Such an instruction is necessary to prevent the jury from treating such evidence as being conclusive upon the issue of guilt rather than merely to corroborate other evidence or impeach the testimony of the defendant.

■ While we must agree with counsel for the defendant that the court's failure to give such an instruction sua sponte constituted error, we do not feel that it requires a reversal under the facts of the instant case. The state introduced sufficient evidence so that the jury could have convicted the defendant without the testimony concerning the polygraph examination. The prosecution introduced the testimony of the two witnesses to the holdup. Winfrey, the owner of the store, described how the robber forced him at gunpoint to put the money in the bag. An employee, Alan Flory, testified that the defendant took the money from him and he positively identified the defendant as being the robber. Although the defendant presented an alibi defense and had three witnesses testify that he was elsewhere at the time of the robbery, such conflicts in the evidence are for the jury to resolve. This court will not upset the verdict on review where there is substantial evidence to support it. State v. Gay, 108 Ariz. 515, 502 P.2d 1334 (1972).

■ Defendant's second assignment of error is that he could not be convicted of robbing the clerk of the market who was named in the indictment when in fact the owner of the market physically handed over the money to the robber. Under the provisions of A.R.S. § 13–641, robbery is defined as " * * * the felonious taking of personal property in the possession of another from his person, or immediate presence, and against his will, accomplished by means of force or fear." Under the facts of this case it is clear that the money was taken from the presence of the clerk named in the indictment although the owner of the market physically handed the money to the robber. The robber had pointed the gun at the named victim and ordered the money to be handed over. The clerk was subjected to force and fear and was prevented from keeping the money or interfering with the taking of it. Under these circumstances there is sufficient evidence to show that the clerk who

was named in the indictment was robbed. State v. Coursey, 71 Ariz. 227, 225 P.2d 713 (1950). The basis for defendant's second assignment of error is without merit.

Defendant also contends that the trial court should have declared a mistrial after the prosecutor asked the defendant on cross-examination the following question:

"Q. Did you say to him in respose [sic] to that that you weren't about to cop out to this robbery because when on the prior times you copped out, the obstructing and grand theft, you were under the impression you were going to get probation?"

▮▮▮ The defense counsel objected because the statement would have allowed self-incriminating evidence which was prohibited by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The judge ordered the prosecution to discontinue this line of questioning and the question along with the negative answer by the defendant were allowed to stand because the judge did not think any damage had occurred. The decision to grant a mistrial is left to the sound discretion of the trial court. In the absence of any showing of abuse of that discretion the ruling of the trial court will not be disturbed on appeal. State v. Harris, 107 Ariz. 41, 481 P.2d 504 (1971).

Appellant's final assignment of error is that the prosecutor's comments in closing argument concerning the failure of defendant's alibi witnesses to contact the police prior to trial was prejudicial and reversible error although the jury was instructed to disregard them. The portion of the prosecutor's closing argument objected to by the defendant is as follows:

"How do you remember so many months ago this robbery at the 7/11 store took place in October, October 31 of 1971? We have all the months of November, December and all the month of January and most of the month of February or

half the month of February gone. Now, if the defendant would have claimed to his attorney who had represented him from the start he was not involved and it was someone else they would have gone out like the police and gone and gotten every single one of these witnesses lined up and then submitted them to our office, submitted them to the police department and said he wasn't involved. But when did he first come up with this? Not until some months later, not until some months later were the witnesses contacted."

After objection by the defense counsel, the judge instructed the jury to disregard the statement. We do not think the remarks were improper.

▮▮▮ The fact that the defendant did not produce his witnesses for the police is certainly a factor which the jury could weigh in determining the validity of the alibi. A party against whom a witness is produced has a right to show everything which may in the slightest degree affect his credibility. Fuller v. State, 23 Ariz. 489, 205 P.2d 324 (1922).

▮▮▮ The comment did not violate the defendant's right to remain silent but merely went to the credibility of the witnesses and their failure to come forward with their story until trial. State v. Belcher, 108 Ariz. 290, 496 P.2d 590 (1972). The jury was also instructed that the arguments and comments of counsel are not evidence and if there is no basis for the comment, then the comment should be disregarded.

▮▮▮ It is well established that counsel for both sides have considerable latitude in their arguments to the jury. The granting or denial of a mistrial based upon such remarks is usually within the sound discretion of the trial court. State v. Gregory, 108 Ariz. 445, 501 P.2d 387 (1972); State v. Branch, 108 Ariz. 351, 498 P.2d 218 (1972); State v. Williams, 107 Ariz. 262, 485 P.2d 832 (1971); State

v. Adair, 106 Ariz. 58, 470 P.2d 671 (1970).

Judgment affirmed.

HAYS, C. J., and HOLOHAN, J., concur.