662 P.2d 1035

**The STATE of Arizona, Appellee,**

v.

**Robert Michael HERSCH, Appellant.**

No. 2 CA–CR 2594.

Court of Appeals of Arizona,
Division 2.

Dec. 22, 1982.

On Motion for Rehearing Feb. 17, 1983.

Rehearing Denied Apr. 4, 1983.

Review Denied May 3, 1983.

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Asst. Atty. Gen., Tucson, for appellee.

James W. Stuehringer, Tucson, for appellant.

## OPINION

BIRDSALL, Judge.

The appellant was accused of unlawful possession of marijuana, unlawful possession of cocaine and unlawful transportation of cocaine. He was found guilty of these three charges by a jury in Graham County where the events giving rise to the charges occurred. He was placed on probation.

His appeal raises questions concerning:

1) the denial of his motion to suppress the narcotics evidence,

2) an evidentiary question,

3) refusal to give an intoxication instruction,

4) insufficiency of the evidence on the transportation count, and

5) a condition of probation requiring him to pay $2500 toward the costs of his prosecution.

We affirm.

The facts giving rise to the convictions are bizarre. At about 6:40 pm on July 26, 1981, a police officer in Safford received a radio report from eye witnesses that a Toyota auto had just struck a parked car and failed to stop. The driver was reported to be wearing a business suit, shirt and tie. Department of Public Safety Officer McGauhey located the car, which was readily identified by license number, stopped in an open field by an irrigation ditch with its motor running and driver's door and hatchback open. He also observed the appellant near the car dressed only in jogging shorts and sneakers. He was walking near the ditch bordering a cotton field and was carrying a suitcase. As the officer stopped and got out of his car, the appellant moved toward the Toyota but lost his balance and fell down. He rose, put the luggage in the car and sat on the front seat with his feet protruding out the open door. He was unable to produce his driver's license on request although he fumbled through the compartment in the car and the suitcase. The officer smelled no liquor but nevertheless concluded the appellant was highly intoxicated—probably on drugs.

Other officers arrived on the scene, including Officer McCabe and Lt. Thompson of the Safford police. During the time before his arrest the appellant, apparently overhearing the officers discuss his condition, asserted voluntarily that he was "not drunk." McCabe arrested the appellant for the traffic violation and driving while intoxicated (drugs) and he was removed to a squad car. A search of the area produced his billfold and also revealed he had probably been in the irrigation ditch. While this search of the field was proceeding, Officer Thompson reached into the appellant's car, opened the suitcase he had been carrying and found some pills, marijuana and a sealed plastic baggie containing cocaine. At that point the officers decided to obtain a search warrant and these items were replaced in the suitcase. The suitcase was

searched about 6–7 minutes after the appellant's arrest and while he was restrained in the patrol car.

The officers prepared affidavits and a search warrant for the car. They also asked for authority to conduct a nighttime search—it was then about 10:00 pm. Nothing was said in the affidavits concerning the prior search and discovery of the contraband. The warrant was issued by a non-lawyer justice of the peace. Not surprisingly the subsequent search conducted a few minutes later, the car having been towed to the police station, disclosed the same incriminating evidence.

### Motion to Suppress

■■■ The first search of the appellant's car and luggage was incident to his arrest. The search required no additional justification and it was lawful. *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). That search could also have been made without a warrant as a search of an automobile on probable cause. *State v. Million,* 120 Ariz. 10, 583 P.2d 897 (1978). The probable cause was the appellant's strange condition giving rise to a belief that evidence of whatever he had taken would be found in his car. The suitcase could also be opened and its contents examined. *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Since that search was not constitutionally infirm, the appellant cannot complain of the second search pursuant to the warrant which revealed the same evidence since it could have been seized when it was first discovered. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). We need not consider other questions presented on this issue. The trial judge correctly applied *Belton* and refused to suppress the evidence.

### Evidentiary Question

The appellant contends that the trial court erred in admitting the opinion of a chemist that the quantities of marijuana and cocaine possessed by the appellant were useable amounts. The substance found which contained cocaine weighed .95 grams. The actual cocaine was ⅓ of this substance, the cocaine being cut with some other unidentified powder. The chemist who conducted laboratory tests on both the narcotics was asked whether the cocaine was a useable amount. The appellant's counsel objected that the witness was not qualified to give an opinion on that subject. The trial court very properly overruled that objection. The record shows the witness had been an employee of the DPS for over six years. During this time he had conducted hundreds of tests for the presence of cocaine and hundreds of tests for the presence of marijuana and heroin. He was not a police officer, had never made a narcotics arrest and had never used cocaine or seen its use. He testified that useable quantity meant the substance had to be in a form and amount that could be used under the known practices; that he had discussed cocaine and the investigation of cocaine used within the state of Arizona with police officers and prosecutors. The witness himself believed that he was qualified by his knowledge, expertise and experience to testify as to what is a useable quantity. We agree.

■■■ Whether a witness is qualified as an expert rests within the sound discretion of the trial court. *State v. Prevost,* 118 Ariz. 100, 574 P.2d 1319 (App.1977); *State v. Owens,* 112 Ariz. 223, 540 P.2d 695 (1975); *State v. Keener,* 110 Ariz. 462, 520 P.2d 510 (1974). The chemist never did testify that he had discussed the subject of useable amount with narcotics officers. Apparently this fact was properly inferred from his entire testimony. This alone, that is discussion about useable amount with narcotics officers, is sufficient foundation for a chemist with experience in a crime laboratory to testify as to useable amount.[1] The appellant has attempted to enshroud the element

---

1. On voir dire the witness also testified that a cocaine addict was brought into the lab to familiarize the chemists with drug use techniques.

of useable amount with unwarranted mystique. For example, on appeal he does not argue directly that the chemist was not an expert, but rather that there was no showing an expert in this field would rely on the narcotics officers, Rule 703, Rules of Evidence, 17A A.R.S. Apparently if the witness had testified directly that experts in this field would rely on the officers, that would be sufficient. Common sense tells us this direct question and answer is unnecessary. Of course an expert relies upon the experience and practical knowledge of others who are themselves experts in a given field. The short answer to this issue is that it takes very little foundation for a witness to testify that an amount of a substance which can be seen, weighed and tested is a useable quantity. *See State v. Moreno,* 92 Ariz. 116, 374 P.2d 872 (1962); *State v. Murphy,* 117 Ariz. 57, 570 P.2d 1070 (1977).

### Intoxication Instruction

■ The trial court refused to give the appellant's requested instruction that the jury could consider his intoxication with regard to his ability to "knowingly" commit the crimes. This ruling was correct. *State v. Ramos,* 133 Ariz. 4, 648 P.2d 119 (1982).

### Transportation Count

■ The appellant makes a strong argument that transportation of a narcotic drug, A.R.S. § 36–1002.02(A), having been made a Class 2 felony along with second-degree murder, kidnapping, rape, and other highly reprehensible crimes, was intended to punish trafficking—not merely transporting a small amount as in this case. Strong as his argument may be the statute specifically provides "any narcotic drug." The legislature implicitly rejected any quantity requirement since it did specifically provide more severe penalties where the amount involved was over $250 value. It is not even necessary to prove a useable amount as an element of unlawful transpor-

tation. *See State v. Ballinger,* 110 Ariz. 422, 520 P.2d 294 (1974). *See also Matter of One 1965 Ford Econoline Van, etc.,* 121 Ariz. 477, 591 P.2d 569 (App.1979).

### Payment of Costs

■ As a condition of probation the appellant was ordered to pay to the Clerk of the Graham County Superior Court $2,500 for reimbursement of costs of prosecution. We held in *State v. Balsam,* 130 Ariz. 452, 636 P.2d 1234 (App.1981), that the payment of a cost of prosecution, extradition expense, could be imposed as a probation condition. That opinion is controlling here.

Affirmed.

HOWARD, C.J., and HATHAWAY, J., concur.

### SUPPLEMENTAL OPINION

### ON MOTION FOR REHEARING

BIRDSALL, Judge.

Both the appellant and the appellee find fault with our disposition of the claimed error in the trial court's denial of the motion to suppress the narcotics. The appellee agrees that although our reasoning has the strength of logic it is at odds with the opinion of the Ninth Circuit in *United States v. Monclavo-Cruz,* 662 F.2d 1285 (9th Cir.1981). We find that decision inapposite because, unlike the facts here, no search was conducted incident to that defendant's arrest. The arresting officer in *Cruz* took both the defendant and her purse to the immigration office without even searching the purse at the scene. He had no knowledge that the contents of the purse offended any law. He searched it one hour after the arrest and found false registration documents.

■ In the instant case the appellant's suitcase was searched at the scene of and

incident to his arrest. That search produced the narcotics. The appellant's custodial arrest was based on probable cause and was therefore a reasonable intrusion under the Fourth Amendment. Since that intrusion was lawful, the search required no additional justification. *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). From this it follows that the appellant no longer had any reasonable expectation of privacy in that suitcase. The fact that the officer placed the items back in the suitcase after he had examined them does not restore any expectation that the contents are again private to him. We are not concerned with a later search after the appellant regained possession of his suitcase. Both the suitcase and the automobile were in the custody of the police at all times material hereto. If we were to agree with the appellee, then if the officer in *Cruz* had searched the defendant's purse at the scene, discovered the incriminating documents and replaced them in the purse, he could not have seized them later without a warrant. Surely the Fourth Amendment requires no such superfluous act. Cf. *People v. Richards,* 32 Crim.L.Rep. (BNA) 2398 (Jan. 24, 1983).

We found it unnecessary to discuss the other issues presented concerning the issuance of the warrant. We adhere to that decision.

We also have not discussed the appellant's argument that the search incident to arrest was too far removed in time and space from the arrest since we found the facts brought it well within *Belton* and the following cases: *See United States v. Russell,* 670 F.2d 323 (D.C.Cir.1982), cert. denied, 457 U.S. 1108, 102 S.Ct. 2909, 73 L.Ed.2d 1317 (1982); *Government of Virgin Islands v. Rasool,* 657 F.2d 582 (3d Cir.1981); *United States v. Enriquez,* 675 F.2d 98 (5th Cir.1982); *United States v. Collins,* 668 F.2d 819 (5th Cir.1982); *United States v. Flem-*

*ing,* 677 F.2d 602 (7th Cir.1982) and *United States v. Brown,* 671 F.2d 585 (D.C.Cir. 1982).

The motion for rehearing is denied.

HOWARD, C.J., and HATHAWAY, J., concur.