NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

KEISHAUN GREEN, *Appellant.*

No. 1 CA-CR 16-0380
FILED 2-22-2018

Appeal from the Superior Court in Maricopa County
No.  CR2013-004868-001
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Nicholaus Podsiadlik
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Patricia A. Orozco[1] joined.

---

**B R O W N,** Judge:

¶1        Keishaun Green appeals from his convictions and sentences for first-degree felony murder and attempted armed robbery. Green challenges the sufficiency of the evidence supporting the convictions and argues the trial court erred by (1) failing to make findings for use of restraints at trial, (2) admitting a video in which he was wearing jail clothing, (3) admitting testimony that he appeared to be considering fleeing from police, and (4) refusing to give a third-party culpability instruction. For the reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        The convictions stem from the fatal shooting of a clerk at a convenience store. At trial, the State presented evidence that Green entered the store, walked to the counter, and within seconds, shot the clerk and fled without taking anything. There were no witnesses to the shooting, but surveillance video cameras recorded the entire incident. The quality of the video was poor, but the police linked Green to the shooting after he was found in possession of a handgun that matched the bullet used to kill the victim. During further investigation, a friend of Green informed the police that Green showed him a picture of the shooter from the surveillance video that had been broadcast on television and admitted that he was the person who shot the victim.

¶3        Green was indicted on charges of first-degree felony murder, a class 1 felony, and attempted armed robbery, a class 3 felony, both dangerous offenses. A jury convicted Green on both counts as charged. The trial court sentenced Green to natural life on the murder conviction, to

---

[1]      The Honorable Patricia A. Orozco, retired Judge of the Arizona Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

begin upon release in CR2013-428030-001, and to a concurrent presumptive 7.5-year prison term on the conviction for attempted armed robbery. Green timely appealed.

## DISCUSSION

### A. Sufficiency of Evidence

**¶4** Green contends the evidence was insufficient to support his convictions. Specifically, he asserts there was no evidence on the element of intent with respect to the offense of attempted armed robbery, which served as the predicate offense for the felony murder. We review claims of insufficient evidence de novo. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011).

**¶5** In considering claims of insufficient evidence, this court's review is limited to whether substantial evidence supports the verdicts. *State v. Scott*, 177 Ariz. 131, 138 (1993); *see also* Ariz. R. Crim. P. 20(a) (requiring trial court to enter judgment of acquittal "if there is no substantial evidence to warrant a conviction"). Substantial evidence is evidence, viewed in the light most favorable to sustaining the verdict, from which a reasonable person could find a defendant guilty beyond a reasonable doubt. *State v. Roseberry*, 210 Ariz. 360, 368-69, ¶ 45 (2005).

**¶6** A person commits armed robbery if, while taking property from the presence of another against his will, such person is armed with a deadly weapon and threatens or uses force with the intent to coerce the surrender of property or to prevent resistance. Ariz. Rev. Stat. ("A.R.S.") §§ 13-1902(A), -1904(A). As applicable here, a person commits attempt if, acting with the kind of culpability otherwise required for the commission of an offense, the person intentionally does or omits to do anything which is any step in a course of conduct planned to culminate in the commission of the offense. *Id.* § 13-1001(A)(2). Green challenges the sufficiency of the evidence on the issue of his intent to take property, arguing that, at best, the evidence showing he took nothing made the question of his intent ambiguous and speculative.

**¶7** A defendant's mental state "will be rarely provable by direct evidence." *State v. Noriega*, 187 Ariz. 282, 286 (App. 1996). Thus, a jury "will usually have to infer it from his behaviors and other circumstances surrounding the event." *Id.*; *see also State v. Routhier*, 137 Ariz. 90, 99 (1983) ("Criminal intent, being a state of mind, is shown by circumstantial evidence."); *State v. Ramos*, 133 Ariz. 4, 6 (1982) ("Intent to commit theft or any felony can be shown by circumstantial evidence."). Here, viewed in its entirety, the evidence permits a finding beyond a reasonable doubt that

Green had the requisite intent to commit armed robbery when he entered the store and pointed the handgun at the clerk.

**¶8**　　　　First, the video depicts Green's actions in entering the store and exhibiting a weapon all completely consistent with a person intending to commit an armed robbery. *See State v. VanWinkle*, 230 Ariz. 387, 392, ¶ 16 (2012) ("Importantly, the jury watched surveillance video from which it could infer [the defendant]'s intent"). Second, there was testimony that Green was in need of money, thereby establishing a financial motive for an attempted robbery. Third, evidence was presented that the victim laughed at Green when he displayed the handgun, which provides an explanation why he shot the clerk and fled without continuing with his attempt to coerce money from the clerk. Finally, the trial record lacks any alternative explanation for Green's actions in the store other than a failed attempted robbery. *Cf. State v. Williams*, 166 Ariz. 132, 139-40 (1987) (finding evidence sufficient to support pecuniary gain as an aggravating factor when the defendant killed a witness during a home burglary because "[n]o explanation for the killing exists other than that [the victim] was killed because he discovered a burglary in progress").

**¶9**　　　　The fact that Green decided to flee without taking anything is what reduces the offense to an attempt; it does not preclude a finding that he had the intent to commit an armed robbery. *See State v. Nash*, 143 Ariz. 392, 404 (1985) ("[I]t is unnecessary for the prosecution to negate every conceivable hypothesis of innocence when guilt has been established by circumstantial evidence."). We therefore conclude that there was sufficient evidence of Green's intent to support the jury's verdicts.

### B.　　Use of Restraints at Trial

**¶10**　　　　Green argues the trial court erred when it failed to make specific factual findings before permitting the sheriff's office to restrain him with a stun belt and leg braces at trial. Green made a pretrial objection to the use of any restraints at trial, noting the sheriff's office has a blanket policy that requires an in-custody inmate to wear a leg brace and stun belt. Citing *Deck v. Missouri*, 544 U.S. 622 (2005), Green argued that use of restraints was unconstitutional and that the leg brace and stun belt would interfere with his colostomy bag. The trial court overruled the objection after confirming with Green that the restraints employed by the sheriff's office did not interfere with his colostomy bag.

**¶11**　　　　"Matters of courtroom security are left to the discretion of the trial court." *State v. Davolt*, 207 Ariz. 191, 211, ¶ 84 (2004). A trial court

abuses its discretion, however, in allowing *visible* restraints at trial in the absence of a particularized inquiry into their necessity. *Deck*, 544 U.S. at 629; *State v. Gomez*, 211 Ariz. 494, 502-03, ¶¶ 40-41 (2005). Reversal is required for a *Deck* violation unless the State can prove beyond a reasonable doubt harmless error. *Deck*, 544 U.S. at 635.

**¶12**　　　　No claim was made in the trial court or on appeal that the restraints used were visible to the jury. Absent a showing that the jury was aware of the use of the restraints, no basis exists for reversal. *See State v. Dixon*, 226 Ariz. 545, 552, ¶¶ 28-31 (2011).

**¶13**　　　　On appeal, Green expands his objection to the use of restraints to include claims that use of a stun belt poses risks of interfering with a defendant's right to counsel, interfering with a defendant's right to be present and meaningfully participate at trial, and chilling a defendant's due process right to testify on his own behalf. None of these claims regarding use of a stun belt were raised below. Consequently, appellate review of these claims has been forfeited except for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2011). Under this standard of review, Green bears the burden of establishing the existence of both fundamental error and resulting prejudice. *Id.* at 567, ¶ 20.

**¶14**　　　　For an error to be "fundamental," a defendant "must show that the error complained of goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial." *Id.* at 568, ¶ 24. The record is devoid of any indication that use of the stun belt at trial had any effect on Green's ability to assist his counsel, or impacted his rights to be present or to testify at trial. Because the record lacks any indicia that the concealed restraints influenced the trial in any manner, Green has failed to meet his burden of establishing fundamental error. *See Dixon*, 226 Ariz. at 551-52, ¶¶ 26, 29-31 (unseen restraints did not violate defendant's right to a fair trial and order requiring their use without adequate inquiry did not constitute fundamental error).

### C.　Video of Interview in Jail Clothing

**¶15**　　　　Green argues the trial court erred in admitting a video of a detective questioning him while he was wearing jail clothing. He contends admission of the video was unfairly prejudicial and violated his right to the presumption of innocence. In admitting the video, the trial court ruled that it was relevant and its probative value was not substantially outweighed by the danger of unfair prejudice. We review a trial court's ruling on the

admission of evidence for abuse of discretion, but review constitutional issues de novo. *State v. Smith*, 215 Ariz. 221, 228, ¶ 20 (2007).

**¶16**      A state cannot compel an accused to stand trial before a jury in prison clothing. *Estelle v. Williams*, 425 U.S. 501, 512 (1976). The rationale behind this rule is that attending a trial in jail clothing could impair the fundamental presumption that the defendant is innocent until proven guilty beyond a reasonable doubt. *Id.* at 504. In announcing this rule, the Supreme Court explained that a defendant's jail clothing at trial would be a constant reminder to the jury that the defendant is in custody and would tend to undercut the presumption of innocence by creating an unacceptable risk that the jury would improperly consider this factor. *Id.* at 504-05.

**¶17**      Green was not tried while dressed in jail clothing. At issue is a relatively brief video of him being interviewed by a detective regarding the shooting. Green fails to cite any authority that admitting an otherwise relevant video of him being questioned while in jail clothing is tantamount to forcing him to wear jail clothing throughout his trial. Introduction of evidence such as an interview video, jail calls, or other similar material that shows a defendant has been in custody at some point does not implicate the same concerns as forcing a defendant, against his will, to wear jail clothing at trial because such evidence is not a "constant reminder of the accused's condition" during the trial that "furthers no essential state policy." *Id.*; *see also State v. Murray*, 184 Ariz. 9, 35 (1995) (holding that knowledge by jury that defendants spent some time in custody prior to trial was not prejudicial and did "not deny the defendants the presumption of innocence"); *State v. Taylor*, 240 S.W.3d 789, 794-96 (Tenn. 2007) (holding admission of video of defendant wearing jail attire did not violate defendant's due process rights or impair the presumption of innocence.).

**¶18**      The trial court did not err in refusing to exclude the video as unfairly prejudicial. Relevant evidence is generally admissible. Ariz. R. Evid. 402. Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Ariz. R. Evid. 403. The trial court is in the best position to determine the balance of probative value and prejudice and is therefore accorded wide deference in such rulings. *State v. Via*, 146 Ariz. 108, 122 (1985). On appeal, we view the challenged evidence "in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *State v. Ortiz*, 238 Ariz. 329, 333, ¶ 5 (App. 2015) (citations and internal punctuation omitted).

¶19 The video of the interview was relevant in showing Green's reactions when confronted by the detective regarding the shooting. Moreover, the jury was aware that Green was arrested and thus spent some time in custody prior to trial. Consequently, being depicted in custody in the video did not inform jurors of anything they did not already know. *See Murray*, 184 Ariz. at 35. In addition, to mitigate any potential prejudice, the trial court proposed a limiting instruction regarding Green's in-custody status in the video. With the concurrence of the parties, the court instructed the jury both at the time the video was admitted and in the final jury instructions that "[w]hether the defendant has been in custody at any time should not be considered by you for any purpose, influence your view of the evidence or impact your deliberations in any way." We presume the jurors followed the court's instruction. *State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006). On this record, the trial court acted within its discretion in admitting the interview video.

### D. Testimony of Possible Flight

¶20 Green argues the trial court erred in allowing a police officer to testify that Green appeared to be considering fleeing when he was stopped on the street by the officer at gunpoint two weeks after the shooting of the clerk. The stop was made for an unrelated incident, but was relevant to the charged offenses because during the stop the officer found Green in possession of the handgun subsequently determined to have been used to shoot the victim.

¶21 At issue is the following testimony elicited by the prosecutor from the officer:

Q. When you saw [Mr. Green] in that area, what did you do?

A. I contacted him. I ordered him to get down on the ground. He didn't immediately comply. He kind of looked around in a nervous fashion as though he was looking for a way out, somewhere to run. As it happened we were in a location that he didn't really have anywhere to go. I repeated the command a couple more times and he eventually complied.

Q. Did you have your service weapon drawn at him?

A. I did.

Green contends this testimony should have been precluded as irrelevant and unfairly prejudicial. We review a trial court's rulings on the admission of evidence for abuse of discretion. *Davolt*, 207 Ariz. at 208, ¶ 60.

**¶22**		Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Ariz. R. Evid. 401. "This standard of relevance is not particularly high." *State v. Oliver*, 158 Ariz. 22, 28 (1988). Actions from which a jury may infer consciousness of guilt for the crime charged is relevant as an admission by conduct. *State v. Bible*, 175 Ariz. 549, 592 (1993).

**¶23**		We are not persuaded by Green's argument that the officer's testimony about his initial reaction to the officer's weapon and commands were irrelevant to the charged offenses because the stop occurred two weeks after the shooting. Regardless of when the stop occurred, Green's actions evincing some consideration on his part to flee from the officer could be reasonably found by the jurors to be indicative of consciousness of guilt with respect to the shooting of the clerk in light of the fact that he was found in possession of the murder weapon during the stop. The trial court could further find that the probative value of the officer's testimony was not substantially outweighed by the danger of any unfair prejudice from the officer's use of his weapon to make the stop. *See* Ariz. R. Evid. 403.

**¶24**		Green's argument that the officer's testimony should have also been precluded as misleading is equally without merit. The fact the stop was made for a separate incident and Green was not a suspect in the shooting of the victim at the time did not render its admission erroneous. Because Green was in possession of the murder weapon when he was stopped, his initial response to the officer was still relevant to show consciousness of guilt with respect to the shooting of the clerk even if there may have been other explanations for how he acted. *See State v. Jeffers*, 135 Ariz. 404, 415 (1983) (holding evidence of escape from jail was relevant to show consciousness of guilt, even though there may have been other explanations for the attempted escape). The existence of any alternative explanation for his initial response when stopped by the officer goes to the weight of the evidence, not its admissibility. *Id.* The trial court did not err in allowing the officer's testimony.

### E.	Third-Party Culpability Instruction

**¶25**		Green argues the trial court erred in denying his request for a third-party culpability instruction. The court denied the request on grounds that the substance of the instruction was adequately covered by

other instructions. We review the trial court's refusal of the instruction for abuse of discretion and "review de novo . . . whether the jurors were properly instructed." *State v. Dann*, 220 Ariz. 351, 364, ¶ 51 (2009).

**¶26** A defendant is entitled to an instruction "on any theory reasonably supported by the evidence." *State v. Moody*, 208 Ariz. 424, 467, ¶ 197 (2004). The trial court is not required to give a requested instruction, however, when other instructions adequately cover its substance. *State v. Rodriguez*, 192 Ariz. 58, 61, ¶ 16 (1998). Our supreme court has held that where the jury is properly instructed on the presumption of innocence and the State's burden of proof, a third-party culpability instruction is not required because "the substance of the instruction [is] adequately covered" by the other instructions. *State v. Parker*, 231 Ariz. 391, 405, ¶¶ 55–56 (2013).

**¶27** In this case, the trial court properly instructed the jury on the presumption of innocence and the State's burden to prove "each element of each charge beyond a reasonable doubt." Thus, the trial court did not abuse its discretion in refusing the requested instruction on third-party culpability.

**¶28** Green's reliance on *Rodriguez* in arguing that the standard burden of proof instructions are not adequate to cover the substance of his requested third-party culpability instruction is misplaced. *Rodriguez* is readily distinguishable as it involved a request for an alibi defense instruction, not a third-party culpability instruction. 192 Ariz. at 61, ¶ 15. In concluding the trial court erred in refusing the request for an alibi defense instruction, our supreme court held "the standard burden of proof instructions do not redress the risk of burden shifting engendered by alibi evidence." *Id.* at 63, ¶ 26.

**¶29** In contrast with *Rodriguez*, our supreme court expressly held in *Parker* that the standard presumption of innocence and burden of proof instructions adequately cover the substance of a third-party culpability instruction, noting "[n]o Arizona case has required a third-party culpability instruction." 231 Ariz. at 405, ¶¶ 55-56. We are bound by the decisions of the Arizona Supreme Court and have no authority to overrule, modify, or disregard them. *State v. Smyers*, 207 Ariz. 314, 318 n.4, ¶ 15 (2004).

**CONCLUSION**

¶30  For the foregoing reasons, we affirm Green's convictions and sentences.

